**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOSEPH A. FERRARA, SR., et al.,

                              Plaintiffs,

           - against -

K&W LOGISTICS LLC,

                             Defendant.
-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

09-CV-3412 (DLI) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

       Joseph Ferrara and nine other trustees (the "Trustees") of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (the "Funds"), commenced this action on August 6, 2009 against defendant K&W Logistics LLC ("KWL") seeking certain relief associated with KWL's alleged failure to make required contributions to the Funds and submit to an audit of its books and records. Docket Entry ("DE") 1 (Complaint). KWL never responded to the Complaint, and the Trustees therefore moved for default judgment. DE 8. By order dated January 13, 2010, the Honorable Dora Lizette Irizarry, United States District Judge, referred the matter to me for a report and recommendation. I now make my report and, for the reasons set forth below, respectfully recommend that the court enter an order awarding the Trustees judgment in the total amount of $96,889.49 (consisting of $70,443.25 in contributions; $9,136.39 in interest on the contributions; $14,088.65 in liquidated additional damages; $2,459.20 in reasonable attorneys' fees; $412.00 in other litigation costs; and $350.00 in liquidated audit fees). I further respectfully recommend that the court also order KWL to submit to an audit of its books and records for the relevant period and permit the Trustees thereafter to petition the court to amend the judgment to reflect any additional award of damages and prejudgment interest that might be appropriate.

I.    Background

The Funds are multi-employer trusts established for the benefit of employees in the building material contractors industry through an Agreement and Declaration of Trust (the "Trust Agreement") entered into by Local Union No. 282 of the International Brotherhood of Teamsters (the "Union") and various industry employees. Complaint ¶¶ 4, 6; DE 10 (Declaration of [Funds Employee] Theresa Cody ("Cody") in Support of Plaintiffs' Request for a Default Judgment) ("Cody Dec.") ¶¶ 4-5 & Ex. A (copy of Trust Agreement). The Trust Agreement requires KWL to contribute to the Funds – and to provide regular written reports upon which contribution amounts are based – according to rates and schedules set forth in a separate collective bargaining agreement to which KWL is a party. Complaint ¶¶ 10, 12; Trust Agreement, Art. IX § 1(a)-(c). KWL entered into a series of such separate agreements with the Union (collectively, the "CBA"), the first of which took effect on November 30, 2007, Complaint ¶ 9 & Cody Dec. Ex. B (latest version of CBA), and which upon expiration was succeeded by a Memorandum of Agreement (the "MOA"). Cody Dec. Ex. D (MOA). The MOA provided for increased rates of contribution to the Funds beginning July 1, 2009. MOA § II. The Trust Agreement further provides that the Trustees may at any time audit KWL's books and records and that KWL's failure to provide such materials for audit within twenty days of the Trustees' written demand constitutes a material breach of the contract. Complaint ¶ 13; Trust Agreement, Art. IX §§ 1(d)-(f).

The Trust Agreement requires KWL to make contributions to the Funds on a timely basis. Trust Agreement, Art. IX § 1(b). Failure to do so not only constitutes a material breach of contract, but also of the relevant provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 *et seq*. ("ERISA"). Complaint ¶ 25; Trust Agreement, Art. IX § 3; 29

2

U.S.C. § 1145. Such a breach entitles the Trustees to seek a range of remedies, including an award of contributions (which the Trustees may estimate pursuant to contractually defined formulas in the event KWL also fails to submit to an audit, submit the required reports associated with the monthly contributions, or maintain the required books and records), as well as interest, an additional amount of liquidated damages, related costs including attorneys' fees, and injunctive relief. Complaint ¶¶ 27, 33-34; Trust Agreement, Art. IX §§ 1(e)-(f), 3; 29 U.S.C. § 1132(g)(2).

The Trustees filed the instant action on August 6, 2009. They alleged that KWL failed to provide its books and records for an audit notwithstanding repeated written demands, and that it thereby breached the Trust Agreement and violated ERISA. Complaint ¶ 21-22, 29-34. The Trustees also claimed that in the event the missing books and records revealed a failure to make timely contributions, that too would constitute a material breach of the Trust Agreement as well as a violation of ERISA. *Id.* ¶ 20, 33-34.

The Trustees served the Complaint on KWL on August 10, 2009. DE 2. KWL never responded. DE 9 (Declaration of [Trustees' Counsel] Michael S. Adler ("Adler") in Support of Plaintiffs' Request for a Default Judgment) ("Adler Dec.") ¶ 5. On December 21, 2009 (after some prompting by the court, *see* DE 3), the Trustees sought the entry of a notation of default. DE 5. I then afforded the Trustees an opportunity to submit, no later than January 12, 2010, any additional written materials in support of their request for relief that they wished for me to consider; I further directed the Trustees to provide a copy of my order to KWL within one week. Order dated December 31, 2009. The Trustees complied with the latter order and on January 12, 2010 filed their motion for default judgment. DE 8. In support of their motion, the Trustees

filed declarations of both their counsel and a senior member of the Funds' Collection Department. *See* Adler Dec.; Cody Dec. The Clerk entered KWL's default on the docket on January 12, 2010, and Judge Irizarry then referred the motion to me. DE 12; Order dated January 13, 2010.

In the proposed order submitted as part of their motion, the Trustees specified the precise relief they sought. They asked the court to find KWL liable for specific monetary damages, calculated by reference to two contractual penalty provision formulas; specifically, the Trustees sought $77,639.65 for unpaid contributions and penalties, $12,430.65 in interest through December 8, 2009 plus $38.21 per day in additional interest accruing from December 9, 2009 through the date of the payment, and $15,527.93 in liquidated damages. DE 8 (Proposed Order) ¶ 2. Additionally, the Trustees requested an order requiring KWL to submit for audit certain books and records relating to the period from November 30, 2007 through June 30, 2009 and that the court find KWL liable to the Trustees for any unpaid contributions revealed by the audit, as well as interest and additional liquidated damages on those amounts, plus costs. *Id.* ¶ 1. Finally, the Trustees requested the reimbursement of $350.00 in audit costs and $5,344.45 in attorneys' fees and other costs. *Id.* ¶ 2.

II.     Discussion

      A.     Applicable Law

           1.     Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc.*

4

*v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g.*, *id.* at 84; *Greyhound Exhibitgroup*, 973 F.2d at 159.

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. The Trustees have submitted the following evidence, in addition to declarations from an employee of the Funds with relevant knowledge and from their counsel: copies of the pertinent provisions of the parties' various contractual agreements; all of the remittance reports for the relevant period that KWL provided to the Trustees, and the Trustees' worksheets containing calculations of the contributions and interest that they assert KWL owes to the Funds. *See* Cody Dec. Exs. A-E. The Trustees have had ample opportunity to put additional information before me but have apparently decided not to do so. Upon this record, I have declined to convene an evidentiary hearing and make the instant report and recommendation on the basis of the submitted documents. *See Action S.A.*, 951 F.2d at 508; *Transatl. Marine Claims Agency*, 109 F.3d at 111.

2.      ERISA

ERISA is a comprehensive legislative scheme governing the administration of employee
benefit funds for the purpose of protecting employees.  *HMI Mech. Sys., Inc. v. McGowan*, 266
F.3d 142, 148 (2d Cir. 2001) (citing *Burgio & Campofelice, Inc. v. New York State Dep't of
Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)).  Under ERISA, employers need not provide any
particular benefits; however, once an employer elects to provide benefits, the statute governs the
terms of administration of the benefits.  *Burgio*, 107 F.3d at 1008.  Employers obligated to make
contributions within the meaning of the statute must do so in accordance with the relevant
multiemployer plan or collective bargaining agreement.  29 U.S.C. § 1145; *Cement & Concrete
Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring
from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett
Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)).  ERISA's overarching purpose – to protect fund
beneficiaries' rights – is equitable, and the court therefore enjoys considerable discretion to
fashion appropriate relief where a plaintiff successfully proves a violation.  *Katsaros v. Cody*,
744 F.2d 270, 281 (2d Cir. 1984); *see also* 29 U.S.C. § 1001(a) (congressional finding that
safeguards must be provided with respect to establishment, operation, and administration of
employee benefit plans to protect the interests of employees and their beneficiaries).

B.      Liability

The Trustees adequately allege that KWL was obligated to make certain contribution
payments to the Funds and to make its books and records available for audit on demand pursuant
to the CBA and ERISA, and that it failed to discharge those obligations.  KWL's default

concedes the truth of those allegations for purposes of liability.  I therefore respectfully recommend that the court find KWL liable on the sole cause of action in the Trustees' Complaint.

C.    Damages

1.    Contributions

a.    Months In Which Remittance Reports Were Submitted

KWL delivered remittance reports to the Funds for eleven of the 19 months from November 30, 2007 through June 30, 2009.  Cody Dec. ¶¶ 19-20.[1]  The submitted reports reveal that KWL did *not* fail to make required contributions during the periods from December 2007 through June 2008 and August through November of 2008; to the contrary, KWL regularly made such contributions during that time.  *See* Cody Dec. Ex. C.  The only problem for these eleven months is that KWL did not comply with its contractual obligation to make its books and records available to the Trustees for an audit upon written demand.  Complaint ¶ 21-23; Cody Dec. ¶ 14. By failing to respond within twenty days of such written demand, KWL breached the Trust Agreement and triggered a provision pursuant to which the Trustees are entitled to "compute ... additional contributions due for any month by taking 50 percent of the number of hours reported

---

[1]  Cody describes the period as having a duration of "twenty months[.]"  Cody Dec. ¶ 19.  In doing so, she includes November 2007 as a distinct month for which damages are available. That assumption is not adequately supported:  as the Trustees themselves have pleaded and proved, KWL did not enter into the CBA until November 30, 2007.  Complaint ¶ 9; CBA at 24.  I acknowledge that the "[CBA], when signed, becomes effective on the 1st day of July[ ] 2006 ... ," CBA § 36, and that the Trustees alleged that KWL was a party to the agreement "for the period from July 1, 2006 through June 30, 2009."  Complaint ¶ 9.  The Trustees do not explain, however, how the CBA could have imposed retroactive obligations on KWL.  In any event, the Trustees seek no relief relating specifically to the month of November 2007.  *See* Cody Dec. Ex. E; Proposed Order ¶ 1.  Accordingly, in considering an appropriate judgment, I make no provision for damages specifically arising from the month of November 2007.

for that month and multiplying said number of hours by the current contribution rate." Trust Agreement, Art. IX § 1(f) (the "Remitted Reports Penalty Provision"); Cody Dec. ¶¶ 15-16.

The Trustees have calculated the amount of contributions owed pursuant to the Remitted Reports Penalty Provision, Cody Dec. Ex. E, and based on a comparison of the worksheets used for those calculations with the contribution rates set forth in the governing agreement, CBA §§ 5, 12(A)-(B) & (D)-(E), it appears that those calculations are incorrect. The Trustees properly calculate the number of hours for each month in which surplus contributions are due by taking "50 percent of the number of hours reported for that month." They then proceed, however, to multiply those numbers by contribution rates that are inconsistent with the CBA for the period at issue. Specifically, the Trustees use rates that are listed in the MOA – rates that did not take effect until July 1, 2009. Cody Dec. ¶ 21; MOA §§ I-II.

To the extent that the Trustees intend to rely on the fact that the Remitted Reports Penalty Provision provides that the Trustees may multiply the calculated number of hours "by the *current* contribution rate," Trust Agreement, Art. IX § 1(f) (emphasis added), they have erred. This court has construed that phrase "to refer to the rate in effect during the time period for which plaintiffs seek contributions." *LaBarbera v. Pass 1234 Trucking Inc.*, 2007 WL 2908175, at *5 (E.D.N.Y. Sept. 28, 2007); *see also LaBarbera v. Tadco Constr. Corp.*, 647 F. Supp. 2d 247, 252 (E.D.N.Y. 2010). Since the Trustees are asking for relief for work performed by Union employees during months before July 1, 2009, it is improper to apply rates listed in the MOA that were not in effect during those months. The proper contribution rates for the Funds are found in the CBA, which includes an increase for some of the funds on July 1, 2008. *See* CBA §§ 5, 12(A)-(B) & (D)-(E). I therefore adjust the hourly contribution rates as follows:

|  | Claimed (MOA) | Adjusted (CBA - Before July 2008) | Adjusted (CBA - After June 2008) |
|---|---|---|---|
| Welfare Fund | $10.39 | $9.20 | $9.60 |
| Pension Fund | $8.50 | $7.00 | $7.00 |
| Annuity Fund | $10.0925 | $9.0025 | $9.5025 |
| Job Training Fund | $0.10 | $0.10 | $0.10 |
| Vacation Sick Leave Fund | $3.00 | $3.00 | $3.00 |
| Aggregate Rate - All Funds | $32.0825 | $28.3025 | $29.2025 |

Applying these rates and the number of hours under the Remitted Reports Penalty

Provision yields the following results:

|  | Hours | | Combined Contribution Rate | | Adjusted Contributions |
|---|---|---|---|---|---|
|  | Reported | Penalty (total x 0.5) | Claimed | Adjusted | |
| Dec. 2007 | 240 | 120 | $32.0825 | $28.3025 | $3,396.30 |
| Jan. 2008 | 88 | 44 | $32.0825 | $28.3025 | $1,245.31 |
| Feb. 2008 | 64 | 32 | $32.0825 | $28.3025 | $905.68 |
| Mar. 2008 | 16 | 8 | $32.0825 | $28.3025 | $226.42 |
| Apr. 2008 | 0 | 0 | $32.0825 | $28.3025 | $0.00 |
| May 2008 | 72 | 36 | $32.0825 | $28.3025 | $1,018.89 |
| June 2008 | 24 | 12 | $32.0825 | $28.3025 | $339.63 |
| Aug. 2008 | 80 | 40 | $32.0825 | $29.2025 | $1,168.10 |
| Sept. 2008 | 32 | 16 | $32.0825 | $29.2025 | $467.24 |
| Oct. 2008 | 0 | 0 | $32.0825 | $29.2025 | $0.00 |
| Nov. 2008 | 0 | 0 | $32.0825 | $29.2025 | $0.00 |
| Total | 616 | 308 | $32.0825 | N/A | $8,767.57 |

I therefore respectfully recommend that the court award the Trustees $8,767.57 for the months in which remittance reports were submitted but for which KWL failed to submit to the demanded audit.

B.    Months In Which Remittance Reports Were Not Submitted

KWL failed to make contributions to the Funds as required under its various agreements for the month of July 2008 as well as the period from December 2008 through June 2009.  In seeking to prove their damages for those months, the Trustees rely on a provision in the Trust agreement that authorizes them to calculate unpaid contributions for any month in which KWL fails to submit remittance reports by resorting to a mathematical formula based on earlier reports. This provision is triggered when an employer "fails to submit the required reports and/or pertinent books and records for audit within twenty (20) days after written demand."  Trust Agreement, Art. IX §1(e) (the "Unremitted Reports Penalty Provision").  The Trustees made written demand for an audit and KWL failed to comply.  Complaint ¶¶ 21-23; Cody Dec. ¶¶ 13-14.  That failure suffices to trigger the Unremitted Reports Penalty Provision.[2]

Where, as here, the Unremitted Reports Penalty Provision is properly invoked, the Trustees may review the employer's twelve most recently submitted remittance reports, select the one with the largest number of reported hours (the "base month"), add ten percent to that number,

---

[2]  The Trustees are also entitled to invoke this provision on the basis of KWL's failure to submit the remittance reports.  Although they did not indicate if their written demand included a request for the missing reports, this court has determined that no such writing is required.  *See LaBarbera v. D. & R. Materials, Inc.*, 588 F. Supp. 2d 342, 345-46 (E.D.N.Y. 2008) (construing identical trust agreement provision to mean written demand is required only when asking for "pertinent books and records," thus mere absence of "required reports" triggers penalty); *LaBarbera v. Best Friends Trucking Co.,* 2010 WL 1692509, at *1 (E.D.N.Y. Apr. 27, 2010) (same).

and calculate the outstanding contributions on the basis of the resulting figure. *See* Unremitted Reports Penalty Provision. Pursuant to that provision, the Trustees use December 2007 as the base month for applying the formula. KWL reported that Union employees worked a total of 240 hours in that month. Cody Dec. ¶¶ 24-25 & Ex. E. The Trustees therefore calculate unpaid contributions based on an assumption that Union employees of KWL worked 264 hours in each of the eight months in which KWL failed to submit a report.

Here again, however, the relevant contractual provision allows for an award calculated on the basis of the "current" rate – meaning that the Trustees' attempt to calculate their damages based on the higher contribution rates implemented under the MOA is improvident. *See* Cody Dec. Ex. E (calculating damages using rates from MOA § II); *compare* Unremitted Reports Penalty Provision, *with* Remitted Reports Penalty Provision. Multiplying the same aggregate hourly contribution rate of $29.2025 calculated above[3] by an assumed work rate of 264 hours per month in which KWL failed to submit remittance reports produces a total of $61,675.68. Adding that amount to the $8,767.57 owed for the months in which KWL failed to submit its reports to an audit yields a total of $70,443.25 in contributions that KWL owes under the terms of its agreements. I respectfully recommend that the court award that amount.

      2.   <u>Interest</u>

The Trustees are entitled to interest on the contributions they have proven above. ERISA provides that such interest should be calculated using the rate in the relevant benefit plan or, if none, the rate prescribed by 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2). An amendment to the

---

[3] As noted above, *see supra* n.1, the Trustees seek no relief relating specifically to November 2007; in all other months at issue, the higher contribution rates under the CBA were in effect.

Trust Agreement sets the applicable rate for the instant claims "at the rate of 1½ % per month of each monthly amount due for each month [sic]." Trust Agreement at A9 (Amendment to Restated Agreement and Declaration of Trust dated Oct. 28, 2003). The Trust Agreement further provides that the Trustees may recover interest at that rate "from the first day of the month when the *payment* was due to the date when payment was made." Trust Agreement, Art. IX § 3 (emphasis added). The Trustees assert that, pursuant to the relevant provisions of their agreement, they are owed $12,430.65 in interest on the contributions through December 8, 2009, plus additional interest accruing from December 9, 2009 through the date of the payment. Proposed Order ¶ 2(b).

I find a lesser amount is appropriate for two reasons. First, the Trustees calculate the interest using an amount of unpaid contributions that they arrived at using inflated contribution rates, as detailed above. Second, the calculation they apply to the amount of unpaid contributions is incorrect. The Trustees calculate the interest by applying the daily equivalent of an annual interest rate of 18 percent to "the number of days between *the first day of the month in which the contributions were due*, and December 8, 2009." Cody Dec. ¶ 33 (emphasis added). The approach is incorrect because it unfairly awards the Trustees interest for the period between the time that "contributions" were due and the time that the "payment" to which the Trustees are now entitled became due.

KWL's obligation to pay sums upon which the Trustees may collect interest arises not directly by virtue of its contractual obligation to make contributions, but rather under the two penalty provisions discussed above. For the months in which KWL made contributions, its breach – and its obligation to pay a sum on which interest is available – arose from its failure to

provide its records for an audit within twenty days of the Funds' written demand. It was only at that point – after the demand had been made in writing and another twenty days had passed without compliance – that KWL faced even the possibility of owing additional amounts to the Funds. At that point, the agreement permitted, but did not require, the Trustees to "*compute* the additional contributions due" for the months at issue. Unremitted Reports Penalty Provision (emphasis added). As a result, for the months in which the Trustees seek damages based on a failure to submit records, the obligation to pay an amount on which interest should be calculated could not have arisen until the Trustees made their calculation. The only evidence in the record as to when the Trustees did so is the worksheets dated December 8, 2009, that Cody used to support their damages calculations. Cody Dec. Ex. E. Accordingly, because interest on the sums due for months in which KWL submitted remittance reports and contributions is calculated as of the first day of the month when the "payment" – rather than the underlying contributions – was due, the proper starting date for the calculation of interest is December 1, 2009.

For similar reasons, the start date is the same for calculating interest on the award for months in which KWL failed to submit remittance reports. The Unremitted Reports Penalty Provision allows the Trustees, upon an employer's failure to submit remittance reports, to "compute the sum due" for the relevant months. Here again, the available evidence shows that the Funds computed the sum of unpaid contributions on December 8, 2009. As a result, interest should be calculated as of December 1, 2009 for that component of the Trustees' claim as well.

In determining the proper end date for the interest calculation, I note that objections to this Report and Recommendation will not be due until, and judgement therefore will be entered no earlier than, August 20, 2010. I therefore conclude that KWL owes interest at a monthly rate

13

of 1.5 percent, for a period of 263 days from December 1, 2009, through August 20, 2010, on a principal amount of $70,443.25. Based on those conclusions, I calculate a total of $9,136.39. I respectfully recommend that the court award that amount of interest.

### 3. Additional Damages

In addition to an award of contributions and interest, ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of unpaid contributions]." 29 U.S.C. § 1132(g)(2). The Trust Agreement provides for such "additional damages" in the maximum allowable amount of twenty percent of unpaid contributions. Trust Agreement, Art. IX § 3(d)(2); Cody Dec. ¶ 35. The Trustees seek twenty percent of the principal owed for all contributions calculated above in the total amount of $15,527.93. Proposed Order ¶ 2(c). As a result of their improper calculations concerning the total amount of contributions, the Trustees calculations are mathematically incorrect. Given that the correct amount of all contributions owed is $70,443.25, the Trustees are entitled to $14,088.65, and I respectfully recommend that the court award the latter amount in additional damages.

### 4. Attorneys' Fees

The Trustees seek reimbursement of $4,882.05 in attorneys' fees for 22.8 hours of compensable work. *See* Adler Dec. ¶¶ 9-10.[4] The relevant statutory provision makes an award of reasonable attorneys' fees obligatory, not discretionary. *See* 29 U.S.C. §§ 1132(g)(2), 1145; *LaBarbera v. Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004).

---

[4] The Trustees actually request a greater amount as reimbursement of attorneys' fees, but they improperly include litigation costs other than fees. I discuss such costs separately below.

Courts in this circuit assess such fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[5] District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore proceed to examine the reasonableness of both the hourly rates at which the Trustees' attorneys seek to be compensated and the number of hours for which they seek reimbursement. As explained below, I conclude that the court should reduce each in calculating its award of attorneys' fees in this case.

a.    Hourly Rates

The Trustees ask for an award of fees based on hourly rates of $370 for partner Elizabeth O'Leary ("O'Leary"), $275 for associate Adler, and $90 for paralegal assistants. Adler Dec. ¶ 9. The Trustees' counsel indicates that their firm "is engaged almost exclusively in the representation of labor unions and employee benefit plans." *Id.* ¶ 12. O'Leary has practiced law

---

[5] Although "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,]" it has become so entrenched in the case law that its use is still permitted, if only as a convenient shorthand. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2008). I use the term here only for such ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*.

for fourteen years and Adler for eight, and both have been engaged in their firm's labor and employee benefits practice, O'Leary for the last twelve years and Adler for the last seven. *Id*.

Although similarly experienced attorneys performing other kinds of work can and do command higher hourly rates, I see no reason why a paying client would agree to pay the hourly rates claimed here, particularly where other specialists performing the same kind of work who regularly practice in this district charge significantly less. *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub*, 2007 WL 4125453, at *11 (E.D.N.Y. Nov. 16, 2007) (finding that a reasonable client would pay an hourly rate of $210 for a partner's work on an ERISA default case). I recognize that, in some circumstances, there have been plaintiffs who have succeeded in securing an hourly rate for their counsel comparable to the rate requested by the attorneys here. *See LaBarbera v. J&A Concrete Corp*., 2008 WL 918244, at *2-3 (E.D.N.Y. April 1, 2008) (modifying magistrate judge's recommendation to award fees at an hourly rate of $210, and instead calculating fee based on an hourly rate of $275). In *J&A Concrete*, however, the court based its decision in part on the fact that the attorney at issue had "nearly 40 years of practicing experience, which distinguishes him from more junior attorneys in similar cases." *Id.* at *3. No attorney in this case had the same amount of experience, and the one responsible for the bulk of the legal work, attorney Adler, had no more than eight years of experience.

As the court in *Arbor Hill* made clear – admittedly in the context of applying a different fee-shifting statute – the ultimate task in considering a reasonable hourly rate is to determine, under all of the circumstances, "the rate a paying client would be willing to pay." 522 F.3d at 190. In this context, I am persuaded that a paying client would be unwilling to pay hourly rates of up to $370 for the services that the attorneys have rendered here. Of particular relevance to

that determination is that in several of the many similar ERISA cases decided recently in this district, plaintiffs represented by counsel with experience comparable to the attorneys here have not even requested, much less received, such high rates of reimbursement, but have instead asked for no more than $250 per hour. *See, e.g.*, *Erath v. Academic Stone Setters, Inc.*, 2008 WL 4146200, at *3 (E.D.N.Y. Sept. 8, 2008) (adopting law firm partner's proposed hourly rate of $200 in ERISA contributions case); *Trs. of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Ben. Fund, Vacation & Holiday Fund, Trade Educ. Fund and 401(K) Savings Plan v. Dan Yant*, 2007 WL 3036759, at *9 (E.D.N.Y. Oct. 16, 2007) (adopting recommendation in ERISA contributions case to accept as reasonable law firm partner's proposed hourly rate of $210). Because I do not see any reason why a paying client would be willing to pay the Trustees' attorneys more than the amounts sought in similar cases such as *Erath* and *Dan Yant*, I recommend that the court base its fee award on an hourly rate of $200 for the partner, O'Leary, and $150 for the associate, Adler. I further recommend that the rates sought for paralegal assistants be reduced to $70 per hour. *See LaBarbera v. Andrew's Trucking Corp.*, 2007 WL 4224631, at *4 (E.D.N.Y. Nov. 26, 2007) (adopting magistrate judge's determination that rate of $70 per hour for a paralegal is reasonable).

### b.  Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir.1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433

17

(1983); *Levy v. Powell*, 2005 WL 1719972, at *7 (E.D.N.Y. July 22, 2005). Having reviewed the Trustees' submissions in this regard I am satisfied that they sufficiently document the 22.8 hours counsel has billed. *See* Adler Dec. Ex. B. But while the hours are adequately documented, I conclude that they are not entirely justified.

The billing records before me reveal some duplication of efforts, as well as other tasks for which the time charges appear somewhat greater than reasonably necessary. The Trustees' counsel already reduced their bill to the Trustees by ten percent. *Id.* ¶ 10 & n.1. Thus, they effectively seek reimbursement for 20.52 hours. Nevertheless, I find that the hours claimed are still somewhat excessive. One acceptable method for "trimming the fat" from a fee application in such circumstances, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed. *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987); *Finkel v. Hall-Mark Elec. Supplies Corp.*, 2009 WL 3401747, at *4 (E.D.N.Y. Oct. 21, 2009) (forty percent reduction); *LaBarbera v. Almar Plumbing & Heating Corp.*, 2008 WL 3887601, at *8 (E.D.N.Y. Aug. 20, 2008) (sixty percent). Under the circumstances of this case, I recommend an overall reduction by twenty percent of the nominal number of hours in the attorneys' records, or a further ten percent beyond the reduction counsel already applied. Specifically, I propose reducing attorney O'Leary's hours from 2.2 to 1.76, reducing attorney Adler's hours from 14.9 to 11.92, and reducing the paralegal assistants' hours from 5.7 to 4.56.

c.     Total Reimbursement

Incorporating my recommended reductions of hourly rates and hours worked into the Trustees' fee application produces the following results:

| Timekeeper | Hourly Rate | | Hours Worked | | Adjusted Fee |
|---|---|---|---|---|---|
| | Claimed | Adjusted | Claimed | Adjusted | |
| O'Leary | $370 | $200 | 2.2 | 1.76 | $352.00 |
| Adler | $275 | $150 | 14.9 | 11.92 | $1,788.00 |
| Paralegals | $90 | $70 | 5.7 | 4.56 | $319.20 |
| Total | | | 22.8 | 18.24 | $2,459.20 |

Accordingly, I respectfully recommend that the court award the Trustees $2,459.20 in attorneys' fees.

     5.    <u>Other Litigation Costs</u>

At no point in any of their submissions do the Trustees specify the costs to which they believe they are entitled. Instead, although they never explicitly acknowledge this fact, they simply (and improperly) request reimbursement for attorneys' fees in an amount that includes not only the actual fees charged by their counsel, but also the costs that counsel claim to have incurred on their behalf. They seek to have reimbursed the following: the $350 filing fee, $62 for service of process, and $50.40 for postage, photocopies, and document delivery services. Adler Dec. ¶ 13. Arguably, in light of the Trustees' failure to present any argument or explanation with respect to costs, the court should deny all such relief. However, ERISA plainly provides for the reimbursement of costs, and the docket conclusively establishes that the Trustees paid $350.00 to file their complaint. Further, submissions by counsel clearly document that the Trustees paid $62.00 for service of process of the complaint. Adler Dec. Ex. C. With respect to the remaining costs, however, the Trustees have failed to provide adequate proof of the necessity

to this litigation and that the cost was in fact incurred.  Accordingly, I respectfully recommend that the court award the plaintiff litigation costs in the amount of $412.00.

      6.    <u>Audit Fee</u>

The Trustees also seek reimbursement of audit fees in the amount of $350.00.  Cody Dec. ¶ 36; Proposed Order ¶ 2(d).  The Trust Agreement specifically provides for such relief in the circumstances of this case.  Trust Agreement, Art. IX § 3(b) & p. A5.  I therefore respectfully recommend that the court grant that portion of the Trustees' request for relief.

      D.    <u>Injunctive Relief</u>

The Trustees also seek injunctive relief pursuant to ERISA.  Specifically, they ask the court to require KWL to submit to an audit of its books and records for the period from November 30, 2007 through June 30, 2009.  Complaint at 9 (prayer for relief); Proposed Order ¶ 1.  In an action to enforce Section 1145 of ERISA, a court shall award, in addition to certain categories of monetary damages, "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records."  *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, 2007 WL 2712314, at *5 (E.D.N.Y. Sept. 13, 2007) (quoting *Mason Tenders Dist. Council Welfare Fund v. A.G.I., Inc.*, 2005 WL 1565831, at *4 (S.D.N.Y. June 8, 2005)).  Here, the Trust Agreement allows the Trustees to audit KWL's books and records "at any time" in connection with KWL's obligation to submit contributions to the Funds.  Trust Agreement, Art. IX § 1(d).

As a result of KWL's default, I must accept as true the Trustees' allegation that KWL has failed to cooperate in an audit of its books and records. By the terms of the Trust Agreement, that allegation – taken together with the Trustees' allegations regarding the contributions owed – is sufficient to require KWL to submit to an audit, and I conclude that such relief is appropriate pursuant to section 1132(g)(2)(E) of ERISA. Should the court order the relief that I now recommend, the scope of the audit should be limited to "[p]ertinent books and records" as defined by Article IX § 1(d) of the Trust Agreement.

I therefore respectfully recommend that the court order KWL to permit and cooperate in an audit of its books and records, subject to the limitations set forth above. I further recommend that, within thirty days of the completion of the audit, the court allow the Trustees to adduce proof of the amount of contributions owed to them by KWL for the period beginning November 30, 2007 and ending June 30, 2009, and to petition the court to amend the judgment to reflect any additional award of damages and prejudgement interest that might be appropriate.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs judgment in the total amount of $96,889.49 (consisting of $70,443.25 in contributions; $9,136.39 in interest on the contributions; $14,088.65 in liquidated additional damages; $2,459.20 in reasonable attorneys' fees; $412.00 in other litigation costs; and $350.00 in liquidated audit fees). I further respectfully recommend that the court also order defendant K&W Logistics LLC to submit to an audit of its books and records for the period from November 30, 2007 through June 30, 2009. Finally, I respectfully recommend that the court permit the plaintiffs, within thirty days of the completion of the audit, to adduce proof of the

amount of any additional contributions the defendant owes them for that period and to petition the court to amend the judgment to reflect any additional award of damages and prejudgment interest that might be appropriate.

IV.    Objections

I direct the plaintiff to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than August 6, 2010. Any objections to this Report and Recommendation must be filed no later than August 20, 2010. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Dated: Brooklyn, New York
       August 3, 2010

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge
